69 F.3d 545
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marco Ernesto Acosta GARCIA, aka Jose Aguirre-Garcia,
Defendant-Appellant.
 No. 94-10587.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 24, 1995.*
Decided Nov. 1, 1995.
 
 Appeal from the United States District Court, for the District of Arizona, D.C. No. CR-94-00339-JMR; John M. Roll, District Judge, Presiding.
 D.Ariz.
 REVERSED.
 Before: Beezer, Thompson, and T.G. Nelson, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Marco Ernesto Acosta Garcia appeals his conviction following the entry of his conditional guilty plea to possession with intent to distribute marijuana, in violation of 21 U.S.C. Sec. 841(a)(1) and conspiracy, in violation of 21 U.S.C. Sec. 846. Acosta Garcia contends that the district court erred by denying his suppression motion because the police lacked reasonable suspicion when they conducted the investigatory stop. We have jurisdiction under 28 U.S.C. Sec. 1291 and reverse.
 
 Background
 
 3
 On June 20, 1994, the Tohono O'Odham Police Department dispatcher reported that an anonymous tipster from the village of Big Fields indicated that a white Ford truck containing two Mexican males was in the area of Big Fields asking for directions to the town of Sells. The village of Big Fields, located eight miles from Sells, is on the Tohono O'Odham Nation and has approximately 150 to 200 people. Big Fields is a restricted area and non-tribal members are required to carry a permit on their person to be in the area. Travelers on Federal Route 24, which runs between Big Fields and the town of Sells, are not required to have a permit. Tohono O'Odham police officer Cray stated that the Tohono O'Odham police regularly stop vehicles in Big Fields if the passengers are not recognized. He stated that Big Fields is a high drug trafficking area and is close to the Mexican border.
 
 
 4
 Both the Tohono O'Odham Police Department and the United States Customs Service immediately responded to the police dispatcher's report. As law enforcement officers headed towards Big Fields on Federal Highway 24, a black Chevrolet truck passed them heading in the opposite direction. Officer Cray, a drug interdiction officer, noticed that the truck contained two Mexican males whom he did not recognize as tribal members. Officer Cray stopped the truck and as he approached it on foot he noticed several bales of marijuana in the truck bed partially covered by a sheet a plywood. Officer Cray arrested Acosta Garcia, the driver, and the passenger.
 
 
 5
 Officer Cray testified at the suppression hearing that he stopped Acosta Garcia because the black truck, like the white truck, contained two Mexican males and the truck "came out of the Big Fields area at the same time that the other vehicle was reported there." Officer Cray admitted that the truck had not committed any traffic violations, that it did not appear heavily loaded, and that the passengers had not exhibited any suspicious behavior. None of the officers checked the truck's license plate to determine if it was registered to a non-tribal member. Officer Cray admitted that Mexican-Americans live on the reservation and that he was not familiar with all of them. Officer Cray testified that prior drug smuggling cases involved the use of a "heat vehicle" and a "contraband vehicle" travelling in tandem. He stated, however, that he had no idea what the black truck was doing and would have continued looking for the white truck if he had been alone. Because other law enforcement vehicles were in the area, he "chose to stop this vehicle and find out why it was coming from Big Fields."
 
 Reasonable Suspicion
 
 6
 Acosta Garcia contends that law enforcement officers lacked reasonable suspicion of criminal activity to justify an investigatory stop. This contention has merit.
 
 
 7
 "Where no findings of fact were made or requested, we will uphold a trial court's denial of a motion to suppress if there is a reasonable view of the evidence that will sustain it." United States v. Harrington, 636 F.2d 1182, 1185 (9th Cir.1980). The evidence is viewed in the light most favorable to the government. Id. Acosta Garcia did not request, and the district court did not make, factual findings with respect to the motion to suppress.
 
 
 8
 Reasonable suspicion exists if the officer is aware of specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity. United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1492 (9th Cir.1994); United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989). The facts are to be interpreted from the perspective of an experienced law enforcement officer under the totality of the circumstances. United States v. Alvarez, 899 F.2d 833, 837 (9th Cir.1990), cert. denied, 498 U.S. 1024 (1991); Hernandez-Alvarado, 891 F.2d at 1416. "[W]hile an officer may evaluate the facts supporting reasonable suspicion in light of his experience, experience may not be used to give the officers unbridled discretion in making a stop." Id. (quoting Nicacio v. United States I.N.S., 797 F.2d 700, 705 (9th Cir.1985)). An anonymous tip, which is corroborated by independent police investigation, may exhibit sufficient indicia of reliability to provide reasonable suspicion to conduct an investigatory stop. Alabama v. White, 496 U.S. 325, 330-31 (1990); Alvarez, 899 F.2d at 836-37.
 
 
 9
 Here, under the totality of the circumstances, the police lacked reasonable suspicion of criminal activity to justify an investigatory stop. Officer Cray's observation that a black truck with two Mexican male passengers was coming from the direction of Big Fields did not corroborate the anonymous tipster's information that a white truck with two Mexican male passengers was in the area of Big Fields. See White, 496 U.S. at 331-32; Alvarez, 899 F.2d at 836-37. There were simply no specific facts giving rise to reasonable articulable suspicion that Acosta-Garcia, who was travelling on a federal highway in a truck of a different model and color, had been trespassing in Big Fields. See Rodriguez-Sanchez, 23 F.3d at 1492; Hernandez-Alvarado, 891 F.2d at 1416. Additionally, Officer Cray admitted that non-tribal members could legally travel on certain roads within the Big Fields area without a permit. He stated, "but there is nothing out there. But we would, if you were not a tribal member, find out why you were there." Furthermore, Officer Cray did not indicate that he stopped Acosta Garcia because he suspected narcotics activity.
 
 
 10
 Officer Cray, by his own admission, did not know what the black truck was doing and made the stop simply to "find out why it was coming from Big Fields." The fact that two vehicles containing Mexican males were located in a known drug smuggling area near the Mexican border, without more, does not give rise to founded suspicion of narcotics activity. See United States v. Morrison, 546 F.2d 319, 320 (9th Cir.1976) (per curiam) (close proximity to border and prior illegal activity, while relevant, do not justify stop absent other indicia of illegal activity). Because the record, read in the light most favorable to the government, contains no specific facts and inferences indicating that Acosta-Garcia was engaged in any illegal activity, we cannot uphold the investigatory stop. See Rodriguez-Sanchez, 23 F.3d at 1492; Hernandez-Alvarado, 891 F.2d at 1416.
 
 
 11
 REVERSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3