NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1983
_____

UNITED STATES OF AMERICA

v.

DAVID TROY JOHNSON,
Appellant.
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(Crim. No. 08-cr-297)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 23, 2011

BEFORE:  FUENTES, FISHER and NYGAARD, *Circuit Judges*

(Opinion Filed:  June 23, 2011)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

David Troy Johnson appeals the District Court's decision to deny his motion to

suppress a firearm and a magazine as "fruits of a poisonous tree," in this case, an

unlawful seizure.  For the reasons set forth below, we will affirm.

I.

We write only for the parties and therefore discuss only the facts necessary to explain our decision. While out on patrol in the late hours of December 3, 2008, police officer Ron Miko ("Miko") stopped several pedestrians and recovered drug paraphernalia. He then approached a house he suspected was involved in the distribution of crack cocaine. Following a short conversation with a man in that house, Miko observed him leave the residence, enter the passenger side of a gray Pontiac, and drive off. The Pontiac was driven by appellant David Johnson.

Suspecting that the passenger was involved in drug activity, Miko entered his marked police car and followed the Pontiac. After a short trip around the block, the passenger exited the vehicle, leaving Miko a car's length away. At this point, Miko noticed that the Pontiac's license plate displayed an expired registration tag. Miko then radioed nearby police officer Chris Dinger ("Dinger") that he would be making a stop of the Pontiac.

After following the Pontiac for a block and a half, Miko activated his emergency lights and siren. The Pontiac did not slow down but continued at a slightly higher speed. Miko remained in pursuit as the Pontiac proceeded through stop signs and traffic lights, at some points driving against the flow of traffic. The car chase culminated with Johnson jumping out of the vehicle and running down a nearby alleyway. Miko left his police car and chased Johnson on foot, yelling "stop, police, you are under arrest." App. Br. at 31.

During the chase, Miko saw Johnson remove a black handgun from underneath his jacket and throw it to his side. Dinger, who along with other officers had joined the foot race, was notified of the dropped gun and recovered it.

2

Meanwhile, the chase continued into the yard and onto the porch of a home in the area. As Johnson struggled to enter the locked home, Miko took his gun out and ordered Johnson several times to show his hands. Johnson was eventually arrested and a search of his person revealed a magazine fitting the pistol recovered by Dinger.

Johnson was charged with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moved to suppress both the pistol and the magazine, claiming they were both the result of an unlawful seizure. Relying on *California v. Hodari D.*, 499 U.S. 621 (1991), the District Court held that the Fourth Amendment did not require the exclusion of the handgun because Johnson voluntarily abandoned the weapon without ever being the subject of a "seizure." *United States v. Johnson*, No. 08-297, 2009 WL 1578040, at *3 (E.D. Pa. 2009). Additionally, the District Court concluded that the magazine was found pursuant to a constitutionally reasonable search incident to a lawful arrest. *Id.* at *4. Johnson filed a timely appeal. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

II.[1]

A.

The Fourth Amendment protects the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs when a police officer uses

---

[1] In reviewing a district court's denial of a motion to suppress evidence, we exercise plenary review over questions of law and accept a district court's findings of fact unless clearly erroneous. *See United States v. Allen*, 618 F.3d 404, 406 (3d Cir. 2010).

3

physical force to restrain a suspect or when a suspect submits to an assertion of authority. *Hodari*, 499 U.S. at 626. A suspect submits to an assertion of authority when he "manifests compliance with police orders." *United States v. Waterman,* 569 F.3d 144, 146 n.3 (3d Cir. 2009) (citing *Couden v. Duffy,* 446 F.3d 483 (3d Cir. 2006). While a traffic stop may constitute a seizure of the person it is justified when based on articulable and reasonable suspicion that either the vehicle or occupant has violated the law. *E.g., Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *see also United Stated v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006).

When property is voluntarily abandoned before a seizure and retrieved by the police, it has been lawfully recovered and there can be no claim that it was the subject of an unconstitutional seizure. *Hodari*, 499 U.S. at 624. After a seizure, the well-established exception for searches incident to a lawful arrest allows the police to search an arrestee's person and the areas from which "he might gain possession of a weapon or destructible evidence" without running afoul of the Fourth Amendment. *Arizona v. Gant,* 129 S. Ct. 1710, 1713, 1716 (2009) (internal Citations omitted).

## B.

Johnson's sole argument on appeal is that the police lacked reasonable suspicion to initiate a traffic stop. As such, "[e]verything that happened after Officer Miko activated his lights and siren is causally connected to the initial invalid attempt to pull the vehicle over" and should be suppressed as the fruit of an unlawful seizure. App. Br. at 9; *see Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (stating that if evidence is

obtained as a result of an unlawful seizure, it is to be excluded as "the 'fruits' of the [police officer's] unlawful action.").

Johnson's argument is flawed because Miko's initiation of the traffic stop did not constitute a seizure for purposes of the Fourth Amendment. After Miko activated his lights and siren, Johnson increased his speed commencing a dangerous police chase. At no point did Johnson "manifest compliance with police orders." *See Waterman,* 569 F.3d at 146 n.3. We agree with the District Court that although there was an attempted traffic stop, Johnson never actually submitted to Miko's show of authority. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment.").

Even as the chase transitioned from car to foot, Miko had still not seized Johnson. When Miko shouted "stop, police, you are under arrest," Johnson kept running down the alleyway. As the Supreme Court stated in *Hodari*, the Fourth Amendment term seizure does not apply to "the prospect of a policeman yelling 'stop, in the name of the law.'" 499 U.S. at 626. Due to Johnson's failure to submit to Miko's show of authority, we agree with the District Court that Johnson was not seized while fleeing from Miko down the alley. Because there was no seizure, Johnson's voluntary decision to abandon the pistol was not the product of a Fourth Amendment violation and, therefore, was not fruit of the poisonous tree. *Id.*

The District Court correctly concluded that the first and only seizure occurred on the porch of the home, and as such, we agree with the decision to allow the magazine into evidence as it was the product of a search incident to a lawful arrest. *See Gant,* 129 S. Ct.

5

at 1716. The scuffle on the porch was the first time physical force was used to subdue and arrest Johnson. *See Hodari,* 499 U.S. at 626. This seizure was well within the confines of the Fourth Amendment as Johnson's flight from police and subsequent actions provided Miko with the requisite probable cause to arrest Johnson without a warrant. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). After making a valid arrest, the Fourth Amendment did not prohibit Miko from conducting a reasonable search of Johnson's person because this was an area from which Johnson "might gain possession of a weapon or destructible evidence." *Gant,* 129 S. Ct. at 1713. Accordingly, the District Court properly denied Johnson's motion to suppress the magazine.[2]

---

[2] The District Court held in the alternative that "[e]ven if there was a prior illegal seizure, evidence of the magazine will not be suppressed because the crimes Johnson committed while fleeing from the police constituted independent grounds for a second, legitimate arrest." *United States v. Johnson*, No. 08-297, 2009 WL 1578040, at *4 n.2 (E.D. Pa. 2009). As the District Court points out, the Third Circuit has not directly ruled on this issue. *Id.* It is worth noting that several circuits have come to the same conclusion. *See, e.g.*, *United States v. Mattiex*, 2006 WL 2741645 (S.D.N.Y. Sept. 21, 2006); *Marshall v. White*, 2006 WL 1791383 (E.D. Mich. June 27, 2006); *United States v. Sprinkle,* 106 F.3d 613 (4th Cir. 1997); *United States v. Dawdy*, 46 F.3d 1427, (8th Cir. 1995); *United States v. Waupekenay*, 973 F.2d 1533, (10th Cir. 1992); *United States v. King*, 724 F.2d 253 (1st Cir. 1984); *United States v. Bailey*, 691 F.2d 1009 (11th Cir. 1982); *United States v. Garcia*, 516 F.2d 318 (9th Cir. 1975); *United States v. Nooks*, 446 F.2d 1283 (5th Cir. 1971). However, because we have already decided that there was no seizure, and that the motion to suppress was correctly denied, there is no reason for us to visit this issue in the current case.

III.

For the foregoing reasons, we will affirm the District Court's decision to deny a motion to suppress both the handgun and the magazine.